The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On October 5, 1995, defendant-employer was insured with Wausau Insurance Company.
3. On October 5, 1995, an employment relationship existed between plaintiff-employee and defendant-employer.
4. No workers' compensation benefits have been paid in this matter.
5. On October 5, 1995, plaintiff allegedly injured her right shoulder and arm while lifting a five gallon bucket of ice.
6. Plaintiff was allegedly unable to work from October 20, 1995 until January 23, 1996, when she was released to light duty work by Dr. W. Jason McDaniel.
7. Plaintiff alleges that on February 20, 1996, Dr. McDaniel restricted plaintiff from working indefinitely.
8. All forms received by the North Carolina Industrial Commission are stipulated into evidence.
9. The parties stipulated plaintiff's medical records into evidence.
10. Pursuant to the Pre-Trial Agreement, which is incorporated herein by reference, the parties agreed that the only issue for hearing would be whether plaintiff sustained an injury or aggravation of a pre-existing injury to wit; adhesive-capsulitis, arising out of and in the course of her employment with defendant-employer.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On the date of the hearing, plaintiff was 49 years of age. She completed the ninth grade and has been employed as a waitress for more than twenty-five years.
2. Plaintiff began working for defendant-employer in 1991 as a waitress at a Waffle House.
3. Plaintiff first began having problems with her right shoulder while at home, on September 10, 1995. Plaintiff could not recall anything in particular that caused her right shoulder pain. Plaintiff sought treatment with a chiropractor on September 11, 1995 and went to the Emergency Room at Raleigh Community Hospital on September 12, 1995. After missing approximately one week of work, plaintiff returned to work and resumed her full duties as a waitress.
4. On October 5, 1995, plaintiff began to make preparations to fill up the ice bin and drink machines. A round bucket without handles was used by the employees to fill with ice. After plaintiff filled the bucket with ice, she brought the bucket to the front of the restaurant, reached down to pick up the bottom of the bucket with her left hand and braced the side of the bucket with her right hand. As plaintiff lifted the bucket up in order to pour the ice into the ice bin, plaintiff's right hand slipped, causing a sharp pain in her right arm. Plaintiff dropped the bucket of ice on the floor.
5. Plaintiff's manager, Shirley Van Luven, heard plaintiff scream and turned around and observed the bucket on the floor. Ms. Van Luven escorted plaintiff to the back of the restaurant. Another co-worker, Racquel Reed, also heard plaintiff scream out in pain and observed the bucket on the floor.
6. Because plaintiff's arm was swollen and continued to hurt, she was advised by her manager to go to Western Wake Medical in Cary, North Carolina on October 20, 1995. The doctor at Western Wake Medical took plaintiff out of work for ten days and advised her to seek treatment with an orthopaedic doctor within that time period.
7. Plaintiff was seen at Raleigh Orthopaedic by Dr. W. Jason McDaniel, Jr. on October 30, 1995. Dr. McDaniel advised plaintiff to remain out of work and to begin physical therapy for her arm. Due to the fact that plaintiff had no health insurance, she was unable to receive physical therapy until approximately three months later.
8. Plaintiff continued treating with Dr. McDaniel, who diagnosed plaintiff as suffering from a "frozen shoulder" or "adhesive capsulitis". On July 3, 1996, Dr. McDaniel took plaintiff out of work indefinitely.
9. Plaintiff's pre-existing shoulder condition was aggravated or exacerbated as a result of her injury on October 5, 1995.
10. Dr. McDaniel requested that plaintiff be seen by a neurologist because of her complaint of numbness in her hands and arms. Plaintiff was seen by Dr. Gregory M. Bertics, on November 11, 1996 and December 17, 1996. Dr. Bertics recommended an MRI of plaintiff's spine along with EMG/NCS tests.
11. Plaintiff was also seen once by Dr. Wallace F. Andrew, Jr., at Raleigh Orthopaedic on December 24, 1996 with regard to symptoms of carpal tunnel syndrome.
12. The MRI of plaintiff's cervical spine revealed evidence of mild ridging and degenerative disc disease at C5-6 and C6-7, with a small disc herniation to the left at C5-6 but not to the right. The EMG/NCS revealed mild carpal tunnel syndrome in plaintiff's right hand. There is insufficient medical evidence of record to prove by the greater weight that plaintiff's carpal tunnel syndrome is causally related to the compensable injury by accident.
13. At this time, it has not been determined whether or not plaintiff will have any permanent partial disability to her right shoulder as a result of her October 5, 1995 incident.
14. As a result of plaintiff's October 5, 1995 incident, she has been unable to earn wages with defendant-employer or in any other employment from October 20, 1995 and continuing, with the exception of one day, January 23, 1996, when she attempted unsuccessfully to return to work as a hostess.
15. Plaintiff earned $2.60 an hour as a waitress and between $40.00 to $50.00 in tips per day. Plaintiff worked seven hours a day, three to four days a week. Plaintiff's average weekly wage was $221.20, yielding a compensation rate of $147.47 per week.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On October 5, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when her right hand slipped from an ice bucket which significantly aggravated her pre-existing adhesive capsulitis. N.C.G.S. § 97-2(6).
2. Plaintiff has failed to show by the greater weight of the evidence that her carpal tunnel syndrome is related to her October 5, 1995 injury by accident. N.C.G.S. § 97-2(6).
3. Plaintiff's medical treatment as a result of her October 5, 1995 injury by accident was reasonably required to effect a cure, give relief, or to lessen her period of disability. N.C.G.S. § 97-25.
4. As a result of plaintiff's compensable injury by accident of October 5, 1995, she has been unable to earn wages with defendant-employer or in any other employment beginning October 20, 1995, with the exception of one day, January 23, 1996, and continuing. N.C.G.S. § 97-29.
5. Plaintiff is entitled to an attorney fee assessed against defendants in the amount of $1,370.00 pursuant to N.C.G.S. § 97-88.
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $147.47 per week beginning October 20, 1995 and continuing until plaintiff returns to work or until further order of the Commission. Defendants are entitled to a deduction for wages earned on January 23, 1996. Amounts of temporary total disability compensation which have accrued shall be paid to plaintiff in a lump sum, subject to an attorney fee provided below.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of plaintiff's October 5, 1995 injury by accident for so long as such treatment may reasonably be required to effect a cure, give relief, and will tend to lessen plaintiff's period of disability.
3. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due plaintiff in Paragraph 1 of this AWARD is approved. Of the accrued amount paid in a lump sum to plaintiff, defendants shall deduct twenty-five percent and forward that amount directly to plaintiff's counsel. For the balance of the attorney fee, defendants shall forward every fourth compensation check directly to plaintiff's counsel.
4. Defendants shall also pay a reasonable attorney fee in the amount of $1,370.00 to Ms. Cutler as part of the cost of this action.
5. Plaintiff shall cooperate with any reasonable request of defendants to help rehabilitate her shoulder and to help get plaintiff back to work.
6. Defendants shall pay the costs.
This the ___ day of October, 1997.
 S/ ___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN JR. CHAIRMAN
S/ ___________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
LKM/bjp